**John LEFLER, Plaintiff,**

v.

**ATLANTIC RICHFIELD COMPANY, INC., Defendant-Third Party Plaintiff-Appellant,**

v.

**GULFCOAST CATERING, INC., Defendant-Third Party Defendant-Appellee.**

No. 85–3340.

United States Court of Appeals, Fifth Circuit.

April 4, 1986.

Rehearing Denied May 1, 1986.

W.K. Christovich, Michael M. Christovich, New Orleans, La., for defendant-third party plaintiff-appellant.

Wood Brown, III, Shelly Hammond Provosty, New Orleans, La., for defendant-third party defendant-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

GEE, Circuit Judge:

The sole question presented by this appeal is whether it is federal maritime law or Louisiana law that governs a cross-claim for indemnification arising out of injuries sustained by a seaman employed on the Outer Continental Shelf of Louisiana. For the reasons assigned below we reverse the judgment of the district court and hold that federal maritime law governs this claim.

## FACTS

In December 1982, Gulfcoast Catering, Inc. (Gulfcoast) entered into a contract with the Atlantic Richfield Company (ARCO), whereby Gulfcoast agreed to furnish catering services to ARCO as "the operator of Chandeleur Sound B1–25 Field Platform," a fixed platform on the Outer Continental Shelf of Louisiana. When the contract began, the platform was still under construction, Gulfcoast and ARCO personnel were temporarily housed on a barge moored near the platform, and the catering services were provided on that vessel.

The plaintiff in this action, John Lefler, was employed as a galleyhand by Gulfcoast, working from December 1982 through June 1983 primarily aboard the barge. In June, when the platform was completed, Lefler moved his lodging and personal effects to the platform, and the major focus of his work moved there.[1]

In July 1983, Lefler was injured while crossing over from the platform to the barge with an armload of cleaning materials. He brought this action against Gulfcoast and ARCO under the Jones Act and General Maritime Law. ARCO then filed a cross-claim against Gulfcoast based on tort and an indemnification provision in the contract between the two.

A bifurcated trial was held. The jury found that the plaintiff was a seaman at the time of the accident, that both ARCO and Gulfcoast were negligent, and that the barge was unseaworthy, assigning percentages of fault.

ARCO's cross-claim against Gulfcoast was decided by the court. It held that the contract between the two was a non-maritime contract, which should be construed under Louisiana law, as provided by the terms of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. The court then ruled that under the Louisiana Oilfield Indemnity Act, La.R.S. 9:2780, the indemnity provision in the contract would not stand and dismissed ARCO's cross-claim. ARCO appeals the district court's action.

## THE LAW

■ In the context of a contract dispute on the Outer Continental Shelf, the applica-

---

1. Despite the customary land-side connotations of the term "catering," Gulfcoast furnished cleaning, laundry and maid service to the workers on the barge and platform in addition to food service. Lefler testified that his job consisted of "cleaning up, being a maid, looking after the quarters itself."

tion of maritime law is precluded except where the subject matter of the controversy bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir.1985). We have stated that, as between employer and employee, the determination of seaman status, supported by the evidence, is by itself a sufficient and independent basis for the application of maritime law to their relationship. *Id.*, citing *Kimble v. Noble Drilling Corp.*, 416 F.2d 847, 850 (5th Cir.1969). It does not necessarily follow, however, that the contractual relationship between ARCO and Gulfcoast is governed by such considerations.

For legal purposes, the Outer Continental Shelf Lands Act designates such fixed platforms as we treat of today as federal enclaves and decrees that disputes arising on them are, with certain exceptions, to be resolved by reference to the law of the adjacent state—Louisiana, in this instance. *Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir.1986) The contract between these parties provides, in substance, that Gulfcoast is to furnish a not distinctively maritime service—catering—on such a platform. To be sure, as matters worked out Mr. Lefler did his work on a vessel until the platform was done: but by the time of his injury, he was performing under the contract more or less as it was written as to the fixed platform but was, in addition, performing services on the barge. In that aspect of his work, the jury found Mr. Lefler was a seaman, and therefore necessarily a member of the *barge's* crew, it being the only vessel on the scene. Neither party contests that finding.

It thus appears that despite their agreement to do one thing, and that thing a landside one, the parties mutually acquiesced in Mr. Lefler's carrying out another job, that of a seagoing housemaid, and that he was injured in the course of per-

forming the latter. There can be little doubt that had the sole contract between the parties been for Gulfcoast to furnish Mr. Lefler's services as a borrowed-servant seaman to ARCO, maritime law would have governed the construction and validity of such an agreement. We see no reason why the circumstances that such a contract developed by implication and consent of the parties as an extension of an express agreement to provide services on a platform and co-existed with the remainder of that express agreement should change its maritime character.

The jury has found that, while an employee of Gulfcoast, Mr. Lefler was injured while serving with Gulfcoast's consent as a crew member of ARCO's barge. Maritime law, not Louisiana law, governs such an arrangement; and under maritime law such indemnity agreements as the basic contract here contained are valid ones. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir.1986). We conclude that, as applied to the maritime extension of this contract, they are likewise valid.[2]

REVERSED and REMANDED

**2.** We need go no further to decide this case. The law in this area is a developing one; and here, especially, questions not presented should

not be decided. See *Theriot, supra,* in text; *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir.1985).