**Joseph Robert STOOT, Plaintiff,**

v.

**FLUOR DRILLING SERVICES, INC.,**
**Defendant–Appellee,**

v.

**D & D CATERING SERVICE, INC.,**
**Third Party Defendant–Appellant.**

No. 87–4462.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1988.

Norman P. Foret, Lafayette, La., for Stoot.

Daniel A. Webb, Collins C. Rossi, Richard A. Fraser, III, New Orleans, La., Anthony D. Moroux, Lafayette, La., for Fluor Drilling.

**1516**

Before CLARK, Chief Judge, RUBIN and JONES, Circuit Judges.

CLARK, Chief Judge:

D & D Catering Service, Inc. appeals the district court's order enforcing a contractual provision requiring D & D to defend and indemnify Fluor Drilling Services, Inc. Holding that the provision is void under Louisiana's Oilfield Anti–Indemnity Statute, we reverse.

## I.

This case arose when Eloise Porter, an employee of D & D Catering Service, Inc. (D & D), attacked Joseph Stoot, an employee of Fluor Drilling Services, Inc. (Fluor), aboard the drilling rig, MR. DAVE. Stoot's hand was severely lacerated in the attack.

Stoot sued D & D in the Western District of Louisiana. The suit ended in a verdict for D & D which we affirmed. *Stoot v. D & D Catering Service, Inc.*, 807 F.2d 1197 (5th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987). Stoot then sued Fluor in the Western District of Louisiana. Fluor filed a third party complaint against D & D claiming that D & D was obligated to defend and indemnify it under Article 10 of their catering contract. D & D refused to defend and indemnify. Fluor filed a motion for summary judgment seeking a ruling that D & D was obligated to defend and indemnify. The main issue in the motion was whether Louisiana's Oilfield Anti–Indemnity Statute, La.Rev.Stat. Ann. § 9:2780 (West Supp.1987) (Anti–Indemnity Statute), which declares void some indemnification agreements made by independent contractors, was applicable. The district court held that the Statute was not applicable because this was a maritime contract governed by federal law, and granted Fluor's motion. The case proceeded to trial with Fluor assuming its own defense. On the first day of trial, Stoot and Fluor settled. The district court entered a consent judgment against Fluor awarding Stoot $150,000.00. D & D then appealed the summary judgment order. Because the district court has not yet ruled on the reasonableness of the settlement, the summary judgment is not a final order under 28 U.S.C. § 1291 (1966).

However, we have jurisdiction under 28 U.S.C. § 1292(a)(3) (1966). We reverse.

### A. *Jurisdiction:*

28 U.S.C. § 1292(a)(3) permits immediate appeals from interlocutory decrees determining the rights and liabilities of parties to admiralty cases. The statute covers both admiralty and maritime cases. Fed.R.Civ.P. 9(h). An interlocutory decree which finally determines the liability of at least one party to a maritime suit is appealable under § 1292(a)(3) even if damages haven't been finally computed. *See, e.g., Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1063–64 (1st Cir.1987); *Todd Shipyards Corp. v. Auto Transport, S.A.*, 763 F.2d 745, 751 (5th Cir.1985); *O'Donnell v. Latham*, 525 F.2d 650, 652 (5th Cir.1976). The intent of § 1292(a)(3) is:

"to permit a party found liable to take an immediate appeal from that finding and thereby possibly avoid an oftentimes costly and protracted trial of the damages issue."

*Seattle–First National Bank v. Bluewater Partnership*, 772 F.2d 565, 568 (9th Cir.1985) (quoting 9 Moore's Federal Practice § 110.19[3] at 209–10 (1985)). Because the district court's order finally determines D & D's rights and obligations vis-a-vis Fluor, it is immediately appealable despite the fact that the reasonableness of Fluor's settlement with Stoot has not been determined.

Fluor questions the timeliness of D & D's appeal. Under 28 U.S.C. § 2107 (1982), the notice of appeal from an interlocutory decree in admiralty must be filed within 15 days after entry of the decree. *See Hunter v. Department of the Air Force Agency*, 846 F.2d 1314, 1316 n. 4 (11th Cir.1988). D & D's notice of appeal was filed 23 days after entry of the district court's order. Therefore, it would be untimely if § 2107 were still in effect.

However, for the reasons set forth in *Curacao Drydock Co. v. M/V AKRITAS,* 710 F.2d 204, 205–06 (5th Cir.1983), the time limits set by Fed.R.App.Pro. 4(a)(1) have superceded the periods fixed by § 2107. In *Curacao,* we held that because Rule 4(a)(1) has superceded § 2107, a party appealing a final judgment in an admiralty case must file his notice of appeal within 30 days as required by Rule 4(a)(1), not within 90 days as prescribed by § 2107. Rule 4(a)(1) makes no distinction between appeals from final orders and appeals as of right from interlocutory orders. Hence, Rule 4(a)(1) also supercedes § 2107's conflicting provision giving parties only 15 days to file notices of appeal from interlocutory maritime decrees. *In re White Cloud Charter Boat Co., Inc.,* 813 F.2d 1513, 1515–16 (9th Cir.1987). Under Rule 4(a)(1), parties appealing interlocutory maritime decrees have 30 days to file their notices of appeal. D & D's notice of appeal, filed 23 days after the district court's order, was timely.

## B. *Choice of Law:*

The district court held that maritime law, not Louisiana law, governed D & D and Fluor's contract. The court relied on *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538–39 (5th Cir.1986) in which we held that the construction of indemnity provisions in maritime contracts is governed by maritime law. *Theriot* went on to say that whether a contract is maritime must be determined by the nature and character of the contract. *Theriot,* 783 F.2d at 538.

To determine the maritime nature of D & D's contract, the district court relied on *Lefler v. Atlantic Richfield Co., Inc.,* 785 F.2d 1341 (5th Cir.1986) in which we held that a catering services contract in which the contractor agreed to provide household services to barges or other movable seagoing vessels included maritime obligations. *Lefler,* 785 F.2d at 1343. The court concluded that under a straightforward application of *Theriot* and *Lefler,* D & D's contract to provide catering services to the drilling rig, MR. DAVE, included maritime obligations and was governed by maritime law.

■ The district court's analysis of the maritime nature of D & D's contract was correct. A caterer's employee working as a galley hand on a drilling rig is a seaman. *O'Dell v. North River Insurance Co.,* 614 F.Supp. 1556, 1560 (W.D.La.1985); *Bolfa v. Pool Offshore Co.,* 623 F.Supp. 1177, 1179 (W.D.La.1985). Porter was engaged in providing galley services aboard a drilling rig when she stabbed Stoot. Hence, the contract was correctly construed as one involving maritime obligations. However, it does not automatically follow that maritime law applies. The district court failed to consider the parties' choice of law clause in Article 12 of the contract which stated that Louisiana law governed.

■ In the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law. *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 952 (5th Cir.1988); *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 (5th Cir.1986); *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 (5th Cir. 1981); *O'Dell v. North River Ins. Co.,* 614 F.Supp. 1556, 1558 (W.D.La.1985). However, under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law. *Hale v. Co–Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D.La. 1984).

■ Louisiana has a substantial relationship to the parties in this case. Fluor, a California corporation, was qualified to do business in Louisiana. More importantly, D & D, the party seeking the protection of Louisiana law, was a Louisiana corporation. Louisiana has declared a strong interest in protecting resident independent contractors from the inequities of indemnity clauses that require the contractor to indemnify the vessel owner against his own negligence. The Anti–Indemnity Statute expressly states:

"The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee."

La.Rev.Stat.Ann. § 9:2780, subd. A (West Supp.1987).

Several cases have recognized the strength of Louisiana's interest in applying the Anti–Indemnity Statute. In *Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir.1986), *cert. denied sub nom. Zapata Offshore Co. v. Timco, Inc.*, 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986), the court refused to enforce a choice of law clause in a master service agreement which specified federal maritime law. The court stated that it would not participate in such an obvious end-run around the Anti–Indemnity Statute. *Matte*, 784 F.2d at 631. In *Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29, 32 (La.App. 1 Cir.1985), the Louisiana Court of Appeals declared void a Texas choice of law clause in a master service agreement because it precluded application of the Anti–Indemnity Statute and hence violated Louisiana public policy.

By contrast, application of the Anti–Indemnity Statute does not conflict with any fundamental purpose of maritime law. The Statute neither conflicts with nor is it preempted by federal maritime law. *Matte, supra,* 784 F.2d at 630, *Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 525 (5th Cir.1986), *cert. denied sub nom. Gulf Oil Corp. v. Danes & Curole Marine Contractors, Inc.*, — U.S. —, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). Indemnity clauses in maritime contracts are typically construed under maritime law because of the federal interest in maintaining a uniform body of maritime law and because states "do not have an extensive regulatory interest in contracts of indemnity." *O'Dell, supra,* 614 F.Supp. at 1559. However, where a choice of law clause mandates the application of a state's law and that state has a strong public policy favoring the application of its law and a substantial relationship to either the parties or the transaction, then that state's law will govern absent a countervailing federal interest. Because Louisiana's Anti–Indemnity Statute does not conflict with any fundamental purpose of maritime law, Louisiana law controls the rights of the parties here as they agreed it should.

### C. *Anti–Indemnity Statute:*

Having concluded that Louisiana law governs, we must determine whether the Anti–Indemnity Statute voids the indemnity clause in D & D's contract. The Anti–Indemnity Statute provides that:

"Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee."

La.Rev.Stat.Ann. § 9:2780, subd. B (West Supp.1987).

Article 10 of the catering contract between Fluor and D & D provides that:

"D and D shall hold [Fluor] free and harmless from any and all liability, costs and charges arising out of injuries or damage to any and all persons, employ-

ees and/or property in any way arising out of or incident to the work to be performed under this Contract whether caused in whole or part by negligence of [Fluor]. D and D further agrees to investigate, handle, respond to, provide defense for and defend any such claims, demand or suit as its sole expense and agrees to bear all other costs and expenses related thereto, even if it is groundless, false or fraudulent."

Because the indemnity clause requires D & D to defend and indemnify Fluor against Fluor's own negligence, the clause is void under the Anti–Indemnity Statute if the Statute applies.

By its terms, the Statute does not apply retroactively to contracts entered into before its effective date, September 11, 1981. La.Rev.Stat.Ann. § 9:2780, subd. I (West Supp.1987); *Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29, 32–33 (La.App. 1 Cir.1985). D & D contracted to provide catering services to Fluor for a period of one year commencing on July 1, 1977. The contract also provided that it would "continue in force and effect thereafter" unless either party gave the other 30 days written notice of termination. Under this automatic continuation clause, the annual period which immediately preceded Stoot's injury on April 18, 1982 occurred on July 1, 1981. Hence, whether we consider July 1, 1977 or July 1, 1981 (as Fluor suggests) to be the contract's date, the contract was entered into before the Statute's effective date. Hence, the Statute may not retroactively apply unless an exception listed in subdivision I of the Statute comes into play. It is not necessary for this court to decide the

precise meaning of the "continue in effect" language under Louisiana contract law.

Subdivision I states that the Anti–Indemnity Statute applies retroactively to:

"certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what [are] commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C." [1]

La.Rev.Stat.Ann. § 9:2780, subd. I (West Supp.1987).

■ If the Fluor/D & D contract was a master service agreement, then it will be covered by the Statute. If it was a contract for specific terminable performance, the Statute is not to be applied retroactively.

A master service agreement is a blanket contract (whether or not so labeled) which covers any kind of work the independent contractor might be requested to perform for the principal and which renews automatically or continues in effect until either party gives notice of termination. *Doucet, supra*, 783 F.2d at 526. A master service agreement usually refers to the type of

---

1. Subdivision C provides:

"The term 'agreement,' as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, alter-

ing, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation."

work contemplated but does not identify a determinate time or place of performance. *Page v. Gulf Oil Corp.*, 775 F.2d 1311, 1315 (5th Cir.1985). Blanket contracts set forth the terms of performance and payment for any and all work and pay the parties might exchange in the future. *Burnham v. Sun Oil Co.*, 618 F.Supp. 782, 785 (W.D.La.1985).

By contrast, a contract for specific terminable performance is directed at a specific job or activity and terminates on its own terms at the completion of the job or upon the impossibility of further performance. *Burnham, supra,* 618 F.Supp. at 785.

D & D's contract contains elements of both a master service agreement and a contract for specific terminable performance. Like a contract for specific terminable performance, it states that D & D shall provide to certain of Fluor's named drilling rigs a specific service, catering, on a continuous basis with performance commencing on July 1, 1977. Like a master service agreement, D & D's obligations do not terminate automatically upon the completion of any specific drilling job, but renew automatically from year to year as the rigs move from job to job until either party gives notice of termination. The features that identify this as a master service agreement clearly predominate.

The Louisiana legislature explicitly stated that a master service agreement entered into before the effective date of the Statute is covered by the Statute. La.Rev.Stat. Ann. § 9:2780, subd. I (West Supp.1987). The legislature undoubtedly made this explicit reference to master service agreements because the agreements automatically renew and often did not require performance until several years after they were executed. If the legislature had not expressly included master service agreements entered into before the Statute's effective date, then contractors bound by these agreements would be subject indefinitely to defend-and-indemnify clauses despite the Statute's passage. This could have largely defeated the intent of the legislature. Because D & D's contract with Fluor is automatically renewing, D & D is within the class of contractors the legislature intended to protect when it drafted the exception in subdivision I.

Further, the Statute specifies that it does not apply retroactively to contracts which call for specific *and* terminable performance. La.Rev.Stat.Ann. 9:2780, subd. I (West Supp.1987). D & D's contract called for specific performance—rig catering at set prices; however, that performance was not terminable. *Burnham, supra,* 618 F.Supp. at 785. Hence, D & D's contract is not exempted as a contract for specific terminable performance entered into before the Statute's effective date. The Anti–Indemnity Statute voids D & D's obligation to defend and indemnify Fluor against Stoot's claims. D & D is not obligated to defend Fluor or to indemnify it for the consent judgment the district court entered in Stoot's favor.

### D. *Prescription:*

D & D argues that Stoot's claim against Fluor was prescribed but that Fluor waived the affirmative defense of prescription by failing to plead it in district court. D & D argues that Fluor's waiver was not binding on D & D and that D & D should be allowed to assert prescription on its own behalf. Because D & D had no obligation to defend or indemnify Fluor, we need not address this argument here.

### II.

The order of the trial court is REVERSED.