ANGELINA CASUALTY CO.

v.

EXXON CORP., U.S.A., INC.

Civ. A. No. 87–3037.

United States District Court,
E.D. Louisiana.

Oct. 26, 1988.

Johnson & McAlpine, John B. Peuler, Trial Atty., Michael L. McAlpine, New Orleans, La., for Angelina Cas. Co.

John R. Schupp, Trial Atty., Thomas K. Wetzel, Julie Parelman Silbert, New Orleans, La., for Exxon Corp., U.S.A.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter came before the Court for hearing on Wednesday, October 12, 1988 on defendant's motion for summary judgment. At the hearing, the Court GRANTED the motion; the Court now gives written reasons for its ruling.

### I.

In February 1985, Point Marine, Inc. and Exxon entered into a "continuing time charter" drafted by Exxon; Point Marine agreed to furnish Exxon with the services of vessels and personnel for Exxon's oil activities. Section 11.6 of the charter states:

> The validity and interpretation of this Charter shall be governed by the laws of the State of Louisiana and the maritime law of the United States of America.

Under § 8.3(b) of the charter, Point Marine is to obtain marine P & I insurance naming Exxon as an additional insured.

Point Marine had in force a marine P & I policy issued by Angelina Casualty Co., providing coverage to Point Marine vessels from September 20, 1984 to September 20, 1985. Under the heading "Additional Assured and Waivers of Subrogation" on page 10 of the policy is the following:

> Privilege is hereby granted the Assured to name others as required by contract or for whom the Assured is performing work as additional assureds on this policy, provided the Assured shall have exercised this option prior to the loss.... Any phraseology required to be incorporated in this policy by parties favored by the Assured with any of the above options shall be deemed to be incorporated herein, but to no greater extent than the privilege allowed by the above options.

On page 11 of the policy is the following:

> It is hereby understood and agreed that:
>
> (a) When any of the vessels insured hereunder are working or performing services for or through any of the following entities, if required in a written or verbal agreement, the entities for or through whom the vessel or vessels is/are working is/are named as additional assured(s) hereunder as respects such vessels only to the extent required by the contract.
>
> .     .     .     .     .
>
> Any entity(ies), as may be required, who is (are) furnished Verification(s) of Insur-

ance by [the insurance broker], evidencing the above wording or substantially similar wording.

Attached to the policy is a "Verification of Insurance" dated May 29, 1985, addressed to Exxon. This endorsement states in part:

It is hereby understood and agreed that whilst the vessel insured hereunder performing [sic] services for the entity named above [viz., Point Marine], said entity shall be deemed an additional insured hereunder with Underwriters' right of subrogation waived.

On March 20, 1985, an employee on one of the vessels chartered to Exxon and insured by Angelina allegedly suffered personal injuries on that vessel; the record does not reveal the place of accident. He has sued Exxon and Point Marine in Texas state court.

Angelina has sued Exxon in this Court under F.R.Civ.P. 9(h) for a declaratory judgment that Angelina owes no insurance, or related duties to defend, to Exxon for this alleged accident. Angelina previously moved for summary judgment, which this Court denied without written reasons. Exxon now moves for summary judgment in its favor.

## II.

In dispute is whether Louisiana's Oilfield Anti–Indemnity Act[1] applies so as to void Exxon's insurance coverage.

### A.

■ The Anti–Indemnity Act does not apply to wholly maritime contracts.[2] Thus, because interpretation of marine insurance policies comes within federal admiralty jurisdiction,[3] there is generally no prohibition against an entity being named an additional assured for its own direct negligence under a marine P & I policy.[4]

In the instant matter, however, the marine policy at issue incorporates the terms of the "continuing time charter" between Point Marine and Exxon. Specifically, by way of endorsement,[5] Angelina's policy names Exxon an additional assured, to the extent required under the continuing time charter.

■ Time-charters are maritime contracts, which come within federal maritime jurisdiction;[6] agreements to procure marine insurance are not.[7] The issue, then, is how to treat the instant "mixed contract": are the additional assured provisions of the instant charter governed by federal maritime law (and thus valid) or instead by Louisiana state law (and thus invalid)? The issue is a difficult one.[8]

The general rule most recently articulated in *Thurmond v. Delta Well Surveyors* is to determine whether "this dispute arose out of the performance of a separate nonmaritime obligation governed by state

1. La. RSA § 9:2780 (West Supp.1988); *see Babineaux v. McBroom Rig Building Service, Inc.,* 806 F.2d 1282 (5th Cir.1987) (holding that the Act invalidated liability insurance protection afforded to a drilling company as an additional insured by a contractor's insurer pursuant to their master service agreement).

2. *See Stoot v. Fluor Drilling Services, Inc.,* 851 F.2d 1514, 1517 (5th Cir.1988); *Lefler v. Atlantic Richfield Co.,* 785 F.2d 1341, 1343 (5th Cir.1986).

3. *E.g., USF & G v. Williams,* 676 F.Supp. 123, 126 & n. 12 (E.D.La.1987).

4. *Cf. Lanasse v. Travelers Insurance Co.,* 450 F.2d 580, 583–84 (5th Cir.1971) (a charterer may be named an additional assured in a marine P & I policy to be covered for its sole negligence as vessel owner), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972).

5. Both the Verification of Insurance and the Certificate of Insurance to Exxon are dated 5/29/85, which is over two months after the accident at issue. The parties, however, do not argue over this point—because, most probably, Angelina was *notified,* by telex or otherwise, of Exxon's additional assured status sometime before the accident date.

6. *See, e.g., Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961).

7. *Syndicate 420 at Lloyd's London v. Glacier General Assurance Co.,* 633 F.Supp. 428, 430 (E.D.La.1986); *see Koch–Ellis Marine Contractors, Inc. v. Phillips Petroleum Co.,* 219 F.2d 520, 521 n. 2 (5th Cir.1955).

8. *See Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 957 (5th Cir.1988) (Garwood, J., concurring) (troubled by apparently wavering precedents).

law."[9] Here, the dispute arose from a Jones Act seaman's action for vessel negligence/unseaworthiness.

Unlike the cases that talk of "mixed contracts" concerning oil-industry-related accidents on Louisiana territorial waters and holding the Anti–Indemnity Act to apply,[10] the instant time charter specifically and principally—and the accident at issue wholly—concerned a maritime obligation.[11]

Were the instigating dispute not maritime in nature, the entire indemnity issue would, in fact, never arise: being a marine P & I policy, Angelina's policy by its terms insures only marine risks, that is, risks to which the insureds are exposed "as owners of the vessel."

While Point Marine's obligation to obtain insurance is, had it been alone, a non-maritime obligation, this obligation is not, as a practical matter, severable from the rest of the time charter.[12] The charter does not specifically provide for separate consideration for the insurance coverage, nor is the obligation to obtain coverage the type of obligation that would be made wholly separate from the time charter—Point Marine is, simply, not an insurance broker.

In sum, (absent valid agreement otherwise, *see* Part II(B) below) federal maritime law, and not Louisiana law with its Anti–Indemnity Statute, applies to Angelina's policy and the charter in general and to the additional assured provisions in the charter in specific.

## B.

The Court must now address whether the parties have made such a "valid agreement otherwise." Specifically, the Court must now consider the effect, if any, of the explicit choice-of-law clause in the continuing time charter.

As the Fifth Circuit recently wrote:

[U]nder admiralty law, where the parties have included a choice of law clause, that [choice] will govern unless the [jurisdiction chosen] has no substantial relationship to the parties or the transaction or other [jurisdiction chosen]'s law conflicts with the fundamental purposes of maritime law.[13]

Because the Fifth Circuit has held that the Anti–Indemnity statute does not conflict with the fundamental purposes of maritime law,[14] the issue for the Court is whether the parties' choice of law has a substantial relationship to the parties or to the transaction at issue.

Had the parties' choice-of-law clause designated Louisiana law as the sole, exclusive choice, then the Anti–Indemnity Statute would apply under the direct authority of *Stoot v. Fluor Drilling Services, Inc.*[15] For without doubt, Louisiana has a substantial relationship to the parties and the charter: Point Marine is a Louisiana corporation, the insurance policy at issue was delivered in Louisiana, and the vessel hired under the charter was to operate much (if not most or all) of the time within or off Louisiana's territorial waters.[16]

Here, however, the parties have chosen both Louisiana *and* general maritime law to apply. Angelina argues that the clause is ambiguous and, since Exxon drafted the

---

**9.** *Id.* at 955 (Wisdom, J., joined by Jones, J.).

**10.** *See, e.g., id.* (no indemnity because accident and contract concerned wire line operations and not the use of a ship).

**11.** *See, e.g., Lefler v. Atlantic Richfield Co.,* 785 F.2d 1341, 1343 (5th Cir.1986) (indemnity owed because accident arose out of maritime services); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538–39 (5th Cir.1986) (indemnity owed because contract specifically concerned use of a ship).

**12.** *Cf.* 1 *Benedict on Admiralty* § 183, at 12–7 (7th ed.) (citing *Nash v. Bohlen,* 167 F. 427 (E.D.N.Y.1909)) ("where one of the terms of a maritime contract of affreightment is that the

carrier shall insure the cargo, a breach of that term can be proved in admiralty although the contract to insure standing by itself would not be a maritime contract").

**13.** *Stoot v. Fluor Drilling Services, Inc.,* 851 F.2d 1514, 1517 (5th Cir.1988).

**14.** *Id.* at 1518 (citing two earlier Fifth Circuit cases holding that the statute does not conflict with the federal common law).

**15.** 851 F.2d 1514 (5th Cir.1988) (applying the Anti–Indemnity Statute to a maritime contract that had a Louisiana choice-of-law clause).

**16.** *See id.* at 1517.

charter, should be construed against Exxon.[17] Exxon argues that the clause is not ambiguous and simply means that provisions that would, absent valid agreement otherwise, be governed by maritime law are to remain governed by maritime law and that provisions that would, absent valid agreement otherwise, be governed by state law (such as under OCSLA, generally applying the law of the adjacent state) or by federal-maritime-law-that-incorporates-the-terms-of-state-law (such as interpretation of insurance provisions) are to be governed by Louisiana state law. The Court agrees with Exxon.

Often, in the maritime field, a court must resolve conflicts between federal maritime and state law. The instant contract provides that the governing state law for these conflicts is to be Louisiana law. The choice-of-law clause does not attempt to alter the ordinary rules for when to apply state law or instead federal maritime law; these latter rules are to remain the same.

In sum, there is no "valid agreement otherwise," for in this case, the parties have chosen the same law that would govern absent any choice-of-law clause. Federal maritime law applies to the "continuing time charter" (and, in particular, to the additional assured provisions) as incorporated into Angelina's P & I policy. The Anti–Indemnity Act therefore not applying, Angelina owes protection and indemnity to Exxon.[18]

### III.

For these reasons, the Court GRANTED Exxon's motion. Final judgment dismissing Angelina's complaint with prejudice at its costs shall be entered forthwith.

---

**17.** *See Zapata Marine Service v. O/Y Finnlines, Inc.,* 571 F.2d 208, 209 (5th Cir.1978) (per curiam) (interpreting a marine contract); *cf. Walter v. Marine Office of America,* 537 F.2d 89, 94–95 & 94 n. 16 (5th Cir.1976) (in interpreting a marine insurance policy under Louisiana law, all ambiguities are to be construed against the insurer).

**18.** Of course, Angelina need only provide P & I to the extent contracted for under the policy—that is, to the extent the policy provides P & I to Point Marine (viz., as vessel owner). *See, e.g., Marathon Oil Co. v. Mid–Continent Underwriters,* 786 F.2d 1301, 1303 (5th Cir.1986).