**ANGELINA CASUALTY COMPANY, Plaintiff–Appellant,**

v.

**EXXON CORPORATION, U.S.A., INC., Defendant–Appellee.**

**No. 88–3870**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

June 26, 1989.

---

**41**

John B. Peuler, Michael L. McAlpine, Johnson & McAlpine, New Orleans, La., for plaintiff-appellant.

John R. Schupp, Julie Parelman Silbert, Thomas K. Wetzel, New Orleans, La., for defendant-appellee.

Before REAVLEY, JONES and DUHE, Circuit Judges.

REAVLEY, Circuit Judge:

In February 1985, Point Marine, Inc. and Exxon entered into a "continuing time charter" drafted by Exxon, in which Point Marine agreed to furnish Exxon with the services of vessels and personnel for Exxon's oil activities. Section 8.3(b) of the charter agreement obligated Point Marine to obtain marine insurance naming Exxon as an additional insured. Section 11.6 of the charter agreement stated: "The validity and interpretation of this Charter shall be governed by the laws of the State of Louisiana and the maritime law of the United States of America." Point Marine had in force a marine policy issued by Angelina Casualty Co., providing coverage to all Point Marine vessels. The policy allowed Point Marine to name other parties as addi-

tional insureds under the policy. In accordance with its agreement with Exxon, Point Marine named Exxon as an additional insured on its policy with Angelina.

On March 20, 1985, a Point Marine employee was injured on one of the vessels chartered to Exxon and insured by Angelina. That employee sued Exxon and Point Marine in Texas state court. Angelina then brought this suit in federal district court against Exxon for a declaratory judgment that Angelina owed no insurance, nor any duties to defend, to Exxon for this accident. Angelina bases its claim on Louisiana's Oil Field Anti–Indemnity Act, La. Rev.State.Ann. § 9:2780 (West Supp.1989), which Angelina argues voids section 8.3(b) of the charter and nullifies its obligations arising out of the insurance policy. Because we hold that Louisiana law does not govern this dispute, we affirm the district court's judgment. 701 F.Supp. 556.

■ A ship charter is unquestionably a maritime contract. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538–39 (5th Cir.1986). A contract to procure insurance, however, is not a maritime contract. *See Koch–Ellis Marine Contractors, Inc. v. Phillips Petroleum Co.*, 219 F.2d 520, 521 n. 2 (5th Cir.1955); *Syndicate 420 at Lloyd's London v. Glacier General Assurance Co.*, 633 F.Supp. 428, 430 (E.D.La. 1986). Angelina argues that the non-maritime nature of section 8.3(b) of the charter agreement makes the charter a mixed contract. Under the rule in *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 955 (5th Cir.1988), state law governs disputes arising out of the performance of a separate non-maritime obligation of a mixed contract.

■ This dispute, however, does not arise out of a non-maritime obligation. Point Marine's non-maritime obligation of naming Exxon as an additional insured on its marine insurance policy was fully performed. This dispute does not concern that provision of the charter. This is a suit on the policy.

[A] policy of marine insurance is a maritime contract; but an agreement to make or procure a particular policy is generally thought not to be. Consequently, if the agreement should be violated and the policy should not be issued, or, being issued, should differ in important particulars from that agreed upon, admiralty would not have jurisdiction of a suit for breach of the contract, or to reform the policy or to take cognizance of a mutual mistake. But if the policy had actually been issued, admiralty jurisdiction would attach for any suit on the policy issued.

1 S. Friedell, *Benedict on Admiralty* § 183, at 12–7 (7th rev. ed. 1988) (footnotes omitted). In this case, the policy was issued, and the insurer now seeks to escape its obligations under the policy. This dispute, therefore, arises out of the performance of a maritime contract.

■ Angelina next argues that the choice of law clause, section 11.6 of the charter agreement, provides that Louisiana law governs the dispute. Section 11.6 is not ambiguous. That provision recognizes the application of both Louisiana state law and United States maritime law. That section provides that when state law governs the validity or interpretation of the contract, Louisiana state law shall apply. The provision does not make a choice between Louisiana law and United States maritime law when both may apply, as in this case. In the absence of a choice of law by the parties, the construction of indemnity provisions in maritime contracts is governed by maritime law. *Stoot v. Fluor Drilling Serv., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. Unit A, Aug. 1981).

■ The Louisiana Oil Field Anti–Indemnity Act, therefore, does not apply to this dispute. Because indemnity agreements are valid under maritime law, *Lefler v. Atlantic Richfield Co., Inc.*, 785 F.2d 1341, 1343 (5th Cir.1986), the judgment of the district court is AFFIRMED.