CARLSON, Presiding Justice, for the Court:
¶ 1. The motion for rehearing is granted.[1] The original opinions are withdrawn and these opinions are substituted therefor.
¶ 2. Ingalls Shipbuilding, Inc., and Transocean Enterprise, Inc., were named defendants in a personal-injury action which was settled. Ingalls Shipbuilding, Inc., alleged a claim for contractual indemnity pursuant to a Shipyard Agreement between itself and Transocean Enterprise, Inc. The Circuit Court of Jackson County entered judgment granting Ingalls Shipbuilding, Inc., indemnity, and as a result, Transocean Enterprise, Inc., appealed to this Court.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶3. This matter arises from a lawsuit filed by Ernie Cardwell against Trans-ocean Enterprise, Inc., (Transocean) and Ingalls Shipbuilding, Inc., (Ingalls)[2] in the Circuit Court of Jackson County. Card-well alleged that he was injured on May 28,1999, while employed by Coastline Contractors, Inc., (Coastline) and working aboard the drill ship Discoverer Enterprise as a welder/pipe fitter. The Discoverer Enterprise originally was constructed in Spain, before sailing to Ingalls’ shipyard in Pascagoula, Mississippi, for installation of a twenty-story drill derrick and various *461 drilling modules. Allegedly, while Card-well was sitting on the post, the vessel’s ballast tanks were adjusted, causing it to shift, which resulted in tension so great that it broke away and ripped the rigging post from the deck. This series of events caused Cardwell to fly approximately twenty feet into the air and land on the ship’s deck, rendering him unconscious.
¶ 4. Cardwell subsequently filed this personal-injury action for damages against both Transocean and Ingalls. Cardwell’s claim was settled for $625,000 ($300,000 paid by Transocean, $300,000 paid by In-galls, and $25,000 paid by workers’ compensation). Ingalls filed a cross-claim against Transocean, alleging that the Shipyard Agreement between them obligated Transocean to defend and indemnify In-galls.[3] Article XVI of the Shipyard Agreement between Transocean Enterprise and Ingalls stated, inter alia:
Builder and Owner each agree to defend, indemnify and hold the other and their respective affiliates, officers, directors, agents and employees and subcontractors free and harmless from and against any and all claims, demands, causes of action, judgments or liabilities of every kind and character (including, without limitation, the cost of the suit and reasonable attorneys’ fees) brought by any invitees of the indemnitor or its subcontractors or representatives or any survivor of the foregoing on account of injury to or death of any such parties or damages to their property in connection with the work. The indemnity obligations assumed in the preceding sentence shall be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive or gross.
¶ 5. On January 10, 2008, the Circuit Court of Jackson County, Judge Robert P. Krebs presiding, heard oral arguments,[4] and subsequently, on July 30, 2008, entered an order granting Ingalls indemnity as to Transocean in the amount of $300,000, subject to prejudgment interest; however, Ingalls’ request for attorneys’ fees was denied. As a result, a Final Judgment, dated August 4, 2008, was entered. On August 14, 2008, Ingalls filed its Motion to Alter or Amend Order and Judgment, seeking attorneys’ fees and expenses in defending against Cardwell’s claims. Transocean responded that it agreed with the position of Ingalls, “but solely for the reason that if indemnity is owed under the Shipyard Agreement at issue, then Transocean agrees the contract would otherwise provide for the recovery of attorney’s fees as a component of this indemnity.” (Emphasis added.) Thus, Transoeean reserved its right to challenge the underlying basis upon which indemnity was awarded. On October 10, 2008, the Jackson County Circuit Court entered its Amended Order and Final Judgment, stating that Ingalls should recover from Transocean “the sum of $300,000 plus its reasonable attorney’s fees of $33,619.50 and expenses of $7,881.94 in defending against the claims of Ernie Cardwell in this case, plus prejudgment interest of $118,112.72 calculated at 8% per annum in accord with Section 75-17-1(1) Mississippi Code Annotated from June 15, 2004 ... plus post-judgment interest of 8% per an- *462 num from the date hereof and all costs of suit herein.” Transocean timely perfected this appeal.
DISCUSSION
¶ 6. Transocean contends that the indemnity provision of the Shipyard Agreement is not triggered because Ernie Card-well was an independent contractor of Transocean, as opposed to a subcontractor or an invitee. Further, Transocean argues that, even assuming the indemnity provision is triggered, Ingalls’ claim is barred by Mississippi Code Section 31-5-41. The issues presented to this Court for consideration are as follows: (1) whether the trial court erred in granting indemnity to Ingalls in its cross-claim against Trans-ocean pursuant to the Shipyard Agreement between these parties; (2) whether the trial court erred by interpreting the contract terms for indemnity to an invitee, when Coastline employee Ernie Cardwell was aboard the vessel as an independent contractor at the time of his alleged injuries; (3) whether the trial court erred in applying Mississippi law over general maritime law, which does not recognize the status of an invitee, and likewise, whether the trial court erred in finding the Discoverer Enterprise was not a vessel capable of navigation; and (4) alternatively, if Mississippi law applies, whether the trial court erred by not applying Mississippi Code Section 31-5-41, which invalidates the indemnity provision at issue. The ultimate issue before this Court is whether the trial court erred in granting indemnity to In-galls. We thus combine these issues and restate the critical issue before us for the sake of today’s discussion.
WHETHER THE TRIAL COURT ERRED IN GRANTING INDEMNITY TO INGALLS IN ITS CROSS-CLAIM AGAINST TRANSOCEAN PURSUANT TO THE SHIPYARD AGREEMENT BETWEEN THESE PARTIES.
¶ 7. “In bench trials, a circuit judge’s findings are subject to the same standard of review as those of a chancellor.” Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 145 (Miss.2007) (citing Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989)). “Our familiar standard of review requires that when a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings.” Ezell v. Williams, 724 So.2d 396, 397 (Miss.1998) (citing Yarbrough v. Camphor, 645 So.2d 867, 869 (Miss.1994); Omnibank of Mantee v. United S. Bank, 607 So.2d 76, 82 (Miss.1992)). Thus, our scope of review affords deferential treatment to the trial judge’s findings. City of Greenville v. Jones, 925 So.2d 106, 109 (Miss.2006). “[T]his Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong.” Yarbrough, 645 So.2d at 869 (citations omitted). “The word ‘manifest,’ as defined in this context, means ‘unmistakable, clear, plain, or indisputable.’ ” Singley v. Singley, 846 So.2d 1004, 1007 (Miss.2002) (quoting Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995)). This Court, however, reviews questions of law de novo. Howard v. Estate of Harper ex rel. Harper, 947 So.2d 854, 856 (Miss.2006) (citing Sennett v. United States Fid. & Guar. Co., 757 So.2d 206, 209 (Miss.2000)). See also Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).
¶ 8. Before the trial court, Ingalls argued that Mississippi law should apply over general maritime law, and the trial court agreed. “It has long been held that neither ship construction nor supplying materials for that purpose is a maritime *463 business.... ” Lowe v. Ingalls Shipbuilding, Div. of Litton Systems, Inc., 723 F.2d 1173, 1185 (5th Cir.1984) (citation omitted). “[T]he same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended.” Thames Towboat Co. v. The Schooner “Francis McDonald” (The Francis McDonald), 254 U.S. 242, 245, 41 S.Ct. 65, 65 L.Ed. 245 (1920); see also Cain v. Transocean Offshore USA, Inc., 518 F.3d 295, 301 (5th Cir.2008) (“a structure under construction remains a non-vessel until it is complete and ready for duty upon the sea”). As stated by the trial court, “[wjhile the vessel was able to sail to In-galls under its own power, it was not in condition that it could perform the type of duty for which it was built, therefore making maritime law inapplicable.” The Discoverer Enterprise was built and designed to be a drill ship; therefore, it was not in condition to function as intended until the twenty-story drill derrick and various drilling modules were installed at Ingalls. Also, the Shipyard Agreement contained a choice-of-law provision which stated that it would be governed by Mississippi law. “[Ujnder admiralty law, where the parties have included a choice of law clause, the state’s law will govern unless the state has no substantial relationship to the parties or the transaction or the state’s law conflicts with the fundamental purposes of maritime law.” Stoot v. Fluor Drilling Servs., Inc., 851 F.2d 1514, 1517 (5th Cir.1988). As such, the trial court correctly determined that maritime law does not apply and that Mississippi law governs this dispute.
¶ 9. The trial court also ruled that Cardwell was an invitee, stating:
“[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage .... ” Martin v. B.P. Exploration & Oil, 769 So.2d 261 (Miss.Ct.App.2000). It is clear that Cardwell was on the Discoverer Enterprise based upon an express invitation to be there. The Court can see no other way, under Mississippi law, to classify Cardwell.
As evidenced by the record, Cardwell was employed by Coastline, and Coastline employees not only performed work assignments at the direction of Transocean, but they actually were housed aboard the Discoverer Enterprise. The trial court did not abuse its discretion in ruling that Cardwell was an invitee under Mississippi law. This Court has held that “an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Leffler v. Sharp, 891 So.2d 152, 156 (Miss.2004) (citations omitted). Cardwell was aboard the Discoverer Enterprise at Ingalls’ shipyard due to the invitation of Transocean via Coastline for the mutual advantage of all parties herein.
¶ 10. As discussed by the trial court, with the classification of Cardwell as an invitee, the language of the Shipyard Agreement is clear, and Transocean seemingly has a duty to indemnify Ingalls. This duty, however, arguably could be voided by Mississippi Code Section 31-5-41 to the extent that the indemnity provision in the Shipyard Agreement provides for indemnification of Ingalls for Ingalls’ own negligence. The trial court justifiably did not address the implications of Mississippi Code Section 31-5-41. This section states:
With respect to all public or private contracts or agreements, for the con *464 struction, alteration, repair or maintenance of buildings, structures, highway-bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise and/or agreement contained therein to indemnify or hold harmless another person from that person’s own negligence is void as against public policy and wholly unenforceable.
This section does not apply to construction bonds or insurance contracts or agreements.
Miss.Code Ann. § 31-5-41 (Rev.2008). This statute could reasonably be interpreted as invalidating indemnity or “hold-harmless” clauses in construction contracts to indemnify another person from that person’s own negligence. Id. Transocean and Ingalls, however, stipulated that the issue of tort allocation of liability was not before the trial court, and thus, not before this Court. In addition, neither party has argued fault, and there is insufficient information in the record for this Court to determine to what extent, if any, Ingalls was negligent and seeks to be indemnified for its own negligence. Thus, this Court, like the trial court, is not required to consider the issue of whether the provisions of Section 31-544 are applicable to today’s case. As such, we are constrained to affirm the judgment of the trial court granting Ingalls indemnity.
CONCLUSION
¶ 11. The trial court correctly determined that Mississippi law governs this dispute and that Cardwell was an invitee. Mississippi Code Section 31-5-41 cannot be applied to our case today since the issue of fault is not before this Court. Thus, we affirm the judgment of the Jackson County Circuit Court.
¶ 12. AFFIRMED.
WALLER, C.J., DICKINSON, LAMAR AND PIERCE, JJ., CONCUR. GRAVES, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.; RANDOLPH AND CHANDLER, JJ., JOIN IN PART. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; DICKINSON AND PIERCE, JJ., JOIN IN PART.

. Based on today's opinion, the Motion to Amend or Clarify Opinion filed by Transocean Enterprise, Inc., is dismissed as moot.

. Ingalls Shipbuilding, Inc., became Northrop Grumman Ship Systems, Inc., in 2002, and in 2008, became Northrop Grumman Shipbuilding, Inc.

. Ingalls also argues that the Shipyard Agreement required Transocean to procure liability insurance to protect Ingalls against Card-well's claims.

. The record reflects that both parties, through their attorneys, agreed to submil the issues to the trial judge on briefs and oral arguments, without the benefit of a jury.