**ST. PAUL FIRE & MARINE INSURANCE COMPANY; Insurance Company Of North America; American Home Assurance Company, Plaintiffs–Counter Defendants–Appellees**

v.

**BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS, Defendant–Counter Claimant–Third Party Plaintiff–Appellant**

v.

**Aon Corporation; Aon Risk Services Incorporated of Texas; Aon Risk Services Incorporated of Louisiana; Aon Limited, Third Party Defendants–Appellants.**

No. 10–30395.

United States Court of Appeals, Fifth Circuit.

March 15, 2011.

---

Ralph S. Hubbard, III, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Patrick Edelen Costello, Esq., Jacques Pierre Degruy, Esq., Mouledoux, Bland, Legrand & Brackett, L.L.C., Harold J. Flanagan, Esq., Sean Patrick Brady, Esq., Thomas More Flanagan, Flanagan Partners, L.L.P., New Orleans, LA, Jon D. Picou, Larzelere Picou Wells Simpson Lonero, L.L.C., Metairie, LA, for Plaintiffs–Counter Defendants–Appellees.

Edward Francis Lebreton, III, Eiland Stuart Ponder, Esq., Fowler Rodriguez Valdes–Fauli, New Orleans, LA, for De-

fendant–Counter Claimant–Third Party Plaintiff–Appellant.

Gustave A. Fritchie, III, Esq., John David Garrett, Edward W. Trapolin, Irwin Fritchie Urquhart & Moore, L.L.C., New Orleans, LA, for Third Party Defendants–Appellants.

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM: *

This is a certified interlocutory appeal from the district court's grant of partial summary judgment in favor of the appellee excess insurance companies, who issued a so-called bumbershoot policy to the appellant Board of Commissioners of the Port of New Orleans ("the Port"). The district court held that it had admiralty jurisdiction because the bumbershoot policy is a marine contract, and that a choice of law clause in the policy that designated New York law as controlling should be enforced. The district court held that under New York law the late notice of the claim provided a complete defense to coverage from appellee St. Paul Fire & Marine Insurance Company.

The Port and Aon now appeal. They contend that the district court had only diversity jurisdiction and should have applied the forum state of Louisiana's law to hold the choice of law clause ineffective. Reviewing the record de novo, *see Canal Ins. Co. v. Coleman,* 625 F.3d 244, 247 (5th Cir.2010), we affirm the district court's judgment.

The threshold issue on appeal is whether the district court properly determined that it had admiralty jurisdiction, which in turn informs the choice of law analysis. *See Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 890 (5th Cir.1991) ("Although a federal court customarily applies the choice of law rules of the forum in which it is located, ... the court in maritime cases must apply general federal maritime choice of law rules."). To determine admiralty jurisdiction in a contract action such as this, we do not consider merely whether a ship or vessel was involved but rather examine "the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 24, 125 S.Ct. 385, 393, 160 L.Ed.2d 283 (2004) (internal quotation marks and citation omitted). The Supreme Court has instructed that the boundaries of admiralty jurisdiction are "conceptual rather than spatial," *id.* at 23, 125 S.Ct. at 393, and that because "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime *commerce,*" a court should focus its inquiry on whether maritime commerce is the principal objective of the contract. *Id.* at 25, 125 S.Ct. at 394 (internal quotation marks and citations omitted) (emphasis in original). We therefore consider the principal objective of the bumbershoot policy here.

The policy is a "mixed" policy that provides broad coverage for the Port's operations. It includes both traditional marine risks, such as collision, towers, and salvage liabilities, and non-marine risks, such as general liability for personal injury and property damage. The Port and Aon contend that the policy is not primarily a

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

marine contract because the Port is primarily a shore side landlord that owns docks, container yards, and inland loading facilities that it leases to other businesses that load and unload ships. The Port argues that when we consider the actual nature of its business and the interests that are insured, we must conclude that the policy is not a marine contract.

Looking at both the type and terms of the policy, and the nature of the Port's business, however, we agree with the district court that the primary object of the bumbershoot policy was maritime commerce. *See Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 317 (2d Cir.2005) ("[C]overage determines whether a policy is 'marine insurance,' and coverage is a function of the terms of the insurance contract and the nature of the business insured."). As for the type of policy at issue, bumbershoot policies are widely recognized as common marine insurance policies. *See The St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.*, 495 F.3d 376, 379 n. 1 (7th Cir.2007) ("A 'bumbershoot' is '[a] marine insurance policy covering multiple liability coverages in excess of one or more different underlying policies (comparable to the Commercial Liability Umbrella covering liabilities on land).'") (quoting *Glossary of Marine Insurance and Shipping Terms*, 14 U.S.F. Mar. L.J. 305, 325 (2001–2002)). The terms of the bumbershoot policy here provided excess coverage to other maritime insurance contracts and specifically included traditional marine coverages. The fact that the coverage also included some land-based operations of the Port is not dispositive because the functioning and purpose of the Port show that the conceptual focus of the policy is maritime commerce.

The Port is specifically charged with the statutory duty to "regulate the *commerce and traffic* of the port and harbor of New Orleans." La.Rev.Stat. Ann. § 34:21(A)(1) (emphasis added). The Port's operations, although partially land-based, are thus inextricably related to maritime commerce. *See Kirby*, 543 U.S. at 24–25, 125 S.Ct. at 393 (explaining that admiralty jurisdiction is proper even if a fringe element of a contract is attenuated from maritime commerce so long as it serves some peculiar maritime concern). The Port also owns and operates fourteen vessels to carry out its charge, and these vessels are specifically covered in the bumbershoot policy. *See Folksamerica*, 413 F.3d at 323 ("There are few objects—perhaps none—more essentially related to maritime commerce than vessels.") (quotation and citation omitted). This differentiates the instant case from cases holding there was no admiralty jurisdiction over a land-based insured operating a dock or shipyard where the policy expressly excluded vessel coverage. *See, e.g., New Hampshire Ins. Co. v. Home Savings & Loan Co.*, 581 F.3d 420, 428–29 (6th Cir.2009) (finding no admiralty jurisdiction where policy covering marina operations excluded "'owned water craft'"). Given the type of policy, the marine coverages and inclusion of specific vessels, and the statutory duty of the Port to regulate the commerce at the harbor and port of New Orleans, we conclude that the nature and character of the contract focused on maritime commerce. *See Kirby*, 543 U.S. at 24–25, 125 S.Ct. at 393.

Aon separately argues that even if the district court correctly determined that maritime commerce is the policy's primary objective, the court failed to address *Kirby's* second hurdle, namely whether the dispute was "inherently local." *See id.* at 22–23, 125 S.Ct. 385 ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."). Aon contends that Louisiana state law controls the instant

case because it involves a personal injury suit filed by a Louisiana resident for a land-based injury. The "inherently local" inquiry does not directly determine the district court's admiralty jurisdiction, however. *See New Hampshire Ins. Co.*, 581 F.3d at 426 ("Because this 'second hurdle' arises only *after* the reviewing court is satisfied that the contract is a maritime contract, the 'inherently local' nature of the case functions more like a basis for abstention than a prerequisite for jurisdiction."). We conclude that the district court properly determined that the policy was a maritime contract and properly exercised admiralty jurisdiction. As we explain below, we also conclude that the district court properly applied admiralty choice of law rules to enforce the New York choice of law clause.

"Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir.2009). The parties' choice of law clause in an admiralty case will govern "unless the [chosen] state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir.1988). The choice of law clause here meets both prongs of this test.

■ New York has a substantial relationship to the parties because plaintiff insurer American Home Insurance Company is a New York corporation. *See* RESTATEMENT (SECOND) CONFLICTS OF LAWS § 187, comment f (state of the chosen law has a substantial relationship to the parties or the contract when the "state is . . . where one of the parties is domiciled or has his principal place of business."). Aon argues that American Home was not

named in the policy as an excess insurer and is inexplicably included in this lawsuit. This argument is unpersuasive because the entity named in the policy as an insurer was affiliated with American Home as its underwriting agent. American Home, the real party in interest, is therefore properly included in the suit, and New York has a substantial relationship to the parties.

The New York law at issue here—allowing late notice of a claim as a complete defense to coverage—has no federal admiralty counterpart and is therefore not contrary to any fundamental purposes of maritime law. *See Stoot*, 851 F.2d at 1517. The Port argues, however, that application of New York law would be contrary to the law of Louisiana, which requires prejudice before an insurer may defeat coverage due to late notice of a claim. It argues that the district court misapplied the *Stoot* test, which it contends should be read to require a comparison of the chosen New York law with the forum state's law rather than federal maritime law. We are unpersuaded. In *Great Lakes*, we were faced with a similar choice of law clause designating New York law to be controlling. We held that the choice of law clause was enforceable because there was no showing that application of New York law "would be unreasonable or unjust" and there was no "showing that New York law conflicts with any fundamental purposes of maritime law." *Great Lakes*, 585 F.3d at 244. We are satisfied that the same is true here, and that the district court properly stated and applied this circuit's precedent for enforcing the parties' contractual choice of law.

■ Finally, the Port argues that the district court misapplied the notice provision in the policy. It contends that at least two of the three insurers received notice of the underlying claim and that the district court improperly required proof

that such notice was insufficient because the policy does not require notice to "all" of the insurers. This argument is unavailing.

The policy's notice provision states, in relevant part, that "[w]henever any Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves an event likely to involve this Policy, notice shall be sent to Underwriters as soon as practicable. . . ." The policy specifically defines "Underwriters" as "the insurer(s) subscribing to this Policy." Under New York law, which governs the contract here, the plain meaning of the policy language requires that all of the subscribing insurers must receive notice. *See Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir.2010) (unambiguous language in an insurance contract is given its plain and ordinary meaning). The record showed that not all of the insurers here received timely notice. The district court did not err.

AFFIRMED.