Olive Gertrude KLINE and Elmer P. Kline, Her Husband, Appellants,

v.

S. M. FLICKINGER CO., Inc., a New York Corporation, and Super-Duper, Inc., a New York Corporation, a Subsidiary of S. M. Flickinger Co., Inc. and Louis Greco, Defendants-Appellees,

and

Louis Greco, Individually and Doing Business as "Red and White" Grocery, Third-Party Defendant-Appellee.

No. 13988.

United States Court of Appeals Third Circuit.

Argued Nov. 23, 1962.

Decided March 7, 1963.

Robert A. Jarvis, Pittsburgh, Pa. (Raymond W. Cromer, Beck, McGinnis & Jarvis, Pittsburgh, Pa., on the brief), for appellants.

V. C. Short, Pittsburgh, Pa., for S. M. Flickinger Co. and Super-Duper, Inc.

Russell J. Butler, Jr., Pittsburgh, Pa. (Weis & Weis, Pittsburgh, Pa., on the brief), for Greco.

Before BIGGS, Chief Judge, GANEY, Circuit Judge, and SHERIDAN, District Judge.

GANEY, Circuit Judge.

The question raised on this appeal is whether the trial court committed reversible error in restricting the issue of negligence at the trial to the condition of the threshold strip of the entrance to a grocery store.

On August 31, 1958, at 5:15 p. m., the wife-plaintiff entered the Red and White retail grocery supermarket in Galeton, Pennsylvania. After she had made a purchase and was in the process of leaving the store through the same entrance that she had come in, she fell forward out the doorway on to the concrete landing which was 3½ inches below the floor level of the store.[1] Her grandson had preceded her in leaving the store and was holding one of the doors, which swung outward open for her.

The entrance was a single opening with two 3 by 7 feet glass panel doors, which swung in opposite directions. The floor had a checkered design and its coloring was different from the outside concrete. The threshold strip was made of metal and extended the length of the doorway opening and covered the entire concrete doorsill, being even with the outside edge thereof, and was fastened to the concrete doorsill by means of screws being insert-ed into the concrete. Inside the store the strip was beveled to meet the floor and fastened with countersunk screws.

The plaintiffs, husband and wife, brought their action on October 16, 1959, against S. M. Flickinger Co., Inc., and Super-Duper, Inc. Paragraph 6 of the complaint avers: "On August 31, 1958, at 5 P.M. * * * by reason of defendants' defective installation or defective maintenance of the sill of the threshold the wife-plaintiff's heel caught upon a defective protuberance at the sill portion of the threshold causing the wife-plaintiff to fall violently forward to the outside concrete landing of the store premises * * *."

On August 2, 1960, plaintiffs amended their complaint to include as an additional defendant, Louis Greco, who had been brought on the record as a third-party defendant. Paragraph 21 of the amended complaint states: "Louis Greco's negligence in failing to properly install the aforementioned sill and the negligent failure to inspect and maintain the said sill and to give notice of the defective condition to all business invitees was the proximate cause of wife plaintiff's injuries * * *."

On December 13, 1960, Chief Judge Wallace S. Gourley denied a motion for summary judgment filed by S. M. Flickinger Co., Inc., and Super-Duper, Inc. In his opinion, the Chief Judge stated that it appears that a substantial dispute of fact exists, inter alia, as to the following:

"3. Whether defendants were guilty of negligence which was the proximate cause of the accident in the preparation of the design, plans and specifications of the business establishment, which * * * would

[1]. Plaintiffs' Pretrial Statement of Facts, filed December 8, 1960, stated in part: "On August 31, 1958, Olive Gertrude Kline, wife plaintiff visited a retail grocery super market bearing the name 'Red and White' located a 1 West Street, Galeton, Pennsylvania for the purpose of purchasing some groceries. At about 5:15 P.M. after purchasing some noodles, the wife plaintiff was walking out of the main entrance of the store, when the shoe of her right foot caught on a protruding screw in the threshold of the door causing her to fall violently forward to the outside concrete landing of the store premises, * * *. The threshold was improperly and negligently constructed and maintained."

fasten liability upon said defendants."

The pre-trial stipulation of the parties filed on June 28, 1961, set forth the issues for trial. In addition to stating that one of the questions was whether "all the defendants are jointly liable for the alleged acts of negligence", the stipulation echoes the words of Chief Judge Gourley quoted above.

A pre-trial conference was held before Judge John L. Miller on July 6, 1961. No pre-trial order was entered as a result of the meeting, but the stipulation was amended on July 15, 1961, to include the names of additional witnesses to be called at the trial and to set forth the list of exhibits some of which were admitted or the formal proof of which was waived.

At the trial, which began on December 6, 1961, before Chief Judge Gourley and a jury, the wife-plaintiff testified that as she was going out of the store her shoe caught on something and she fell out the door onto the concrete landing, and that at the time she was wearing wedgies, a type of shoe in which the sole and heel are of one piece and of the same elevation. Plaintiffs called one John Douglas, a general contractor active in the building construction business for some fifty years, as an expert witness and also as a fact witness to explain what caused the wife-plaintiff to fall. He testified that six weeks after the accident he inspected the entrance to the store and noticed that the floor of the store was sunken slightly about three-sixteenths of an inch beneath the level metal threshold strip, and that the strip could be depressed at the place where the floor was uneven by the weight of a person's footstep, and when the strip was depressed, the top portion of a fixed screw would extend above the strip. He stated that the threshold strip was not properly installed because it was placed on an uneven floor base and that this defect had nothing to do with the design of the entrance to the store. However, on cross-examination, he gave his expert opinion that the entrance way was designed improperly because the threshold strip came to the very edge of the doorsill and that the fault here lay in the design of the entrance way in that it should have been made level with the inside floor of the store by eliminating the doorstep. Near the close of the defendants' case, counsel moved to strike that portion of Douglas' testimony concerning his expert opinion that the entrance was improperly designed because of the drop of some $3\frac{1}{2}$ inches to the concrete ramp outside of the store which was 6 feet wide by 40 feet in length. At this juncture plaintiffs did not, as permitted by Federal Civil Rule 15(b), request the court to allow the complaint to be amended so as to include the claim of proper design of the entrance as being a proximate cause of the wife-plaintiff's injuries, for they were of the belief that it was already covered by the Pre-trial Stipulation. In response to the oral motion, the trial judge, in the interest of justice, gave plaintiffs an alternative: Either go on with the trial and have the case go to the jury solely on the question of whether there was a faulty base for the threshold strip which, when depressed, caused a screw to rise above the strip, or have the court declare a mistrial at the plaintiffs' expense and retry the case in January of 1962. This, the court explained, was to give the defendants an opportunity to contest any claim of faulty design of the entrance by showing, if such were the case, that it was not an uncommon practice for a business establishment to have a step at its very entrance. To this suggestion, the plaintiffs' counsel remarked: "Naturally we want to go ahead. We cannot afford the expense." However, in view of the fact that the trial judge indicated that the motion was proper, he did not, at that time, caution the jury to disregard Douglas' testimony concerning faulty design of the front entrance, or direct that the testimony be stricken from the record, but stated he would take care of the ruling on the motion in his charge to the jury. Accordingly, in his charge he did include the following admonition: "You shall not consider or discuss in your de-

liberations any question as to the area beyond the threshold, as to whether or not it was or was not proper under the circumstances, because that is not involved in the proceeding."

The jury found for the defendants and judgment on the verdict was entered on December 13, 1961. Plaintiffs' timely motion for a new trial was denied on February 5, 1962.[2]

 The court committed no error in restricting the issue of negligence at the trial. The defendants, by delaying in requesting the court to strike Douglas' testimony concerning faulty design, did not waive their right to make such a motion. When a pre-trial order or stipulation is involved, Rule 15(b), concerning amendments to conform to the evidence, must be read in connection with Rule 16.[3] While the failure of formal amendment of a pre-trial order or stipulation, absent prejudice, will not affect the trial of an issue, Franklin Life Insurance Company v. Bieniek, 312 F.2d 365 (C.A.3, December 27, 1962); 3 Moore's Fed.Pract. (2nd Ed.) ¶ 16.20, there was no implicit amendment of the pre-trial stipulation here. The trial judge's charge to the jury, in effect, ruled out any such possible amendment.

We are unable to find any indication in the record that the plaintiffs, throughout the presentation of their case, made any claim that the drop of 3½ inches from the edge of the threshold strip covering the sill being described as the strip, was a cause of the wife-plaintiff's fall. The subject was not mentioned until the witness, Douglas, gave his opinion on cross-examination. It is true the issue of proximity comes within the designation "in the preparation of the design, plan and specification of the business establishment" set forth in the Pre-trial Stipulation. But when that Stipulation is read in connection with statements made during the proceeding, from the complaint to the close of plaintiffs' case, it is apparent that the "design" of the entrance was not contemplated by plaintiffs as an issue in the action. The colloquy between Judge Miller and plaintiffs' attorney at the pre-trial conference on July 6, 1961, set forth in the Appendix to this opinion, makes this abundantly clear.

Plaintiffs were not prejudiced by the court's action in limiting the issue of negligence. They were not restricted in the proof of their case and the court did not strike factual testimony from the record. Moreover, there was no evidence that the design or shape of the entrance to the store was a proximate cause of the wife-plaintiff's fall.

Even if we assume that the design of the entrance was in the area of the jury's contemplation, as to negligence, in view of the obvious nature of the sill and entrance involving no degree of complexity, expert opinion was uncalled for and if rejected by the court, would not have been reversible error. Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U.S.

---

2. D.C., 201 F.Supp. 671.

3. Rule 16, subsections (1), (2) and (6) provide:

"Pre-Trial Procedure; Formulating Issues

"In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

"(1) The simplification of the issues;

"(2) The necessity or desirability of amendments to the pleadings;

\* \* \* \* \*

"(6) Such other matters as may aid in the disposition of the action.

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions."

469, 24 L.Ed. 256 (1876); Campbell v. Clark, 283 F.2d 766 (C.A.10, 1960); Jacob v. Philadelphia, 333 Pa. 584, 588, 5 A.2d 176 (1939). The jury could have resolved that question without the aid of expert opinion.

The order of the district court will be affirmed.

## APPENDIX

The following is the pertinent colloquy between Judge John L. Miller and the attorney for the parties at the pre-trial conference held on July 6, 1961:

"*The Court:* * * * As I understand this action, it is coming into this court by virtue of diversity of citizenship, and the action is brought by the plaintiffs to recover for personal injuries sustained when the wife-plaintiff caught her heel on a screw protruding from the threshold of a Red & White Grocery Store in Galeton, and she fell fracturing her hip * * *.

"That is your contention, is that correct, Mr. Jarvis?

"*Mr. Jarvis:* That is correct, that is part of our contention. In substance, that is what our contention is.

\* \* \* \* \* \*

"*The Court:* Is it your contention that the defendants were negligent in permitting this screw to protrude from the threshold—or was it the doorstep?

"*Mr. Jarvis:* It was a doorsill, a metal sill. You step on the sill and the screw would remain in place and the sill would go down, leaving the screw protruding.

"*The Court:* What about notice to these people?

"*Mr. Jarvis:* The question of notice—it is our contention that the defendants formulated the plans for the construction of this door and supervised the construction job during the course of the construction, together with the other defendant, Louis Greco.

"*The Court:* Can you prove that this screw protruded there for a long time, for any length of time?

"*Mr. Jarvis:* Well—

"*The Court:* How far did it protrude?

"*Mr. Jarvis:* It protruded above the sill. The screw was stationary; it would be the sill that moved downward from the screw and would leave the screw above the sill about a half-inch.

"*The Court:* Are you contending there was a defect in the sill?

"*Mr. Jarvis:* Yes, there was a defect in the sill.

"*The Court:* And that the screw protruded how much?

"*Mr. Jarvis:* As much as a half-inch or three-fourths of an inch.

\* \* \* \* \* \*

"*The Court:* How long had it been in that condition?

"*Mr. Jarvis:* It could have been from the very time it was constructed there was a defect there in the construction, and also in the maintenance.

\* \* \* \* \* \*

"*The Court:* It was as she went in this new door that she tripped on this screw?

"*Mr. Jarvis:* As she was coming out.

"*The Court:* * * * Can you prove that this sill and screw had been there in that condition for any length of time prior to August 31, 1958?

"*Mr. Jarvis:* We don't have any evidence of any prior accidents with the screw, Your Honor.

"*The Court:* Don't you have to show notice to these people, either constructive or actual?

"*Mr. Jarvis:* I think there is constructive notice by the fact of the condition of the sill as it was at the time—there was a space beneath the metal sill and the concrete upon

which it would be resting. There was a space beneath it which resulted in the sill going down under the weight of a person's body and leaving the screw protruding. The screw itself was not defective, it was the condition of the sill as installed and as maintained on the premises.

\* \* \* \* \* \*

"*The Court:* When you step on the sill, then the sill goes down?

"*Mr. Jarvis:* The sill goes down and the screw remains stationary.

"*The Court:* Now I get the picture."